COGGINS v. HELMSLEY. See Case No. 14,109.

## Case No. 2,958.

### COGGSWELL v. WARREN et al.

[1 Curt. 223.][1]

Circuit Court, D. Maine. Sept. Term, 1852.

EXECUTION — LEVY ON EQUITY OF REDEMPTION— EXTENSION—SHERIFF'S RETURN.

1. An attachment of all the right, title, and interest of the defendant in and to any lands in the county, binds his right of redemption of mortgaged land, and not the fee, and if the execution be extended on the land, the title dates only from the seizure on the execution.

[Cited in Wyman v. Babcock, Case No. 18,-113.]

2. By the law of Maine a mortgagee may extend on the land mortgaged, an execution issuing on a judgment for the debt secured by the mortgage.

3. If an officer's return can be fairly construed so as to be sufficient in law, it is the duty of the court so to construe it.

This was a bill in equity to redeem a mortgage. The respondents denied the title of the complainant to redeem. It appeared that the complainant's title was derived from Mr. C. S. Daveis, who having caused the equity of redemption of the mortgagor to be attached on an original writ, extended his execution on the land within thirty days after the date of his judgment. The respondents claimed under the president, directors and company of the Portland Bank, who being the assignees of a note and the mortgage sought to be redeemed, also caused the right, title, and interest of the mortgagor, in any land in the county, to be attached on an original writ founded on the mortgage debt, and extended their execution on part of the land mortgaged, and other lands of the mortgagor. The attachment in behalf of the bank was prior to that in behalf of Mr. Daveis, but the latter preceded the extent of the execution of the bank. Some other facts are sufficiently adverted to, and stated in the opinion of the court.

Mr. Barnes and E. H. Daveis (with whom was W. P. Fessenden), for complainant.

Mr. Shepley, for respondents.

CURTIS, Circuit Justice. The first and most important question in this case is, whether the execution in the name of the Portland Bank could lawfully be levied on

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

part of the land embraced in the mortgage given to secure the same debt for which the execution issued. Another question was made and argued at the bar, whether the attachment in behalf of the bank on the original writ was valid. I do not deem it necessary to decide this question. The only interest which the debtor had in this land, when both the attachment in behalf of the bank, and that in behalf of Mr. Daveis, was made, was an equity of redemption, and neither attachment could bind any thing besides that equity. But neither the bank nor Mr. Daveis caused an execution to be levied on this equity of redemption pursuant to the attachment. An equity of redemption, as such, can be levied on, only by a sale at auction, in the manner prescribed by the statute. Warren v. Childs, 11 Mass. 222; Aiken v. Medex, 15 Me. 157. This was not done by the bank at all, nor by Mr. Daveis, until after the expiration of thirty days from the date of his judgment. Each party attached the equity of redemption, and extended the execution on the fee. This may be done, and be good as against the debtor and those claiming under him subsequently to the extent, but such extent does not relate back to the attachment of the equity, except in one case specially provided for in the statute (Rev. St. 1821, c. 60, § 1): "When any right in equity of redeeming real estate which is mortgaged, shall be attached on mesne process, and pending such attachment such mortgaged real estate shall be redeemed by the mortgagor, the attaching creditor shall have the same lien on the said estate as though the attachment had been of the fee, and execution may be levied thereon accordingly." This clearly implies what, independent of this provision, would seem to be clear, that in other cases an extent cannot be made on the land as if the attachment had been of the fee, when it was of the equity of redemption only; and the case stands clear of the attachments, and must be decided upon a comparison of the titles gained by the extents. That of the bank was prior in time, and, if valid, must prevail. The objection made to it is, that the debt, for which the execution issued, was secured by a mortgage covering the land levied upon. Whether this objection be valid depends upon the local law of Maine. The argument is that this law has given to the mortgagor three years, after entry for condition broken, to redeem the land; that if the creditor can extend his execution on the land he may thereby cut down the term of redemption to one year from the date of the extent, which may be, as in this case it was, less than three years from the breach of the condition; and that by taking a mortgage, the creditor does impliedly agree, that in respect to that debt, the debtor shall have a right of redemption for three years, from the entry for breach of condition. This argument has had the sanction of high author-

ity (Atkins v. Sawyer, 1 Pick. 351); but, in my mind, as applied to an extent on the land, it is open to much question. The statute which gives this right of redemption is limited to a particular class of cases. There is no general and positive provision of statute law, that mortgagors shall have a right to redeem, for three years after the debt becomes payable. The design of the statute was to regulate foreclosures, by entry for condition broken, and it merely provides, that when the mortgagee shall have obtained actual possession for condition broken, the mortgagor may redeem at any time within three years next after such possession obtained, and not afterwards. But the same system of statute law enables every judgment creditor, to levy his execution on the land of his debtor, and just as clearly grants this right to the creditor, as the other law grants the right of redemption to the debtor. Both must stand and be effectual, if possible. The legislature, having made no exception out of its grant of remedy to the creditor, none can be implied by the court, unless clearly demanded by some other provision of law; and if that other provision is applicable only to a different remedy by foreclosure, and may have a legitimate effect according to its terms and apparent meaning, without interfering with other remedies, I should hesitate long, before I resorted to it, to create a limitation upon the right of creditors, to use the ordinary process of the law.

To say that the creditor has agreed that the debtor may have three years to redeem, is to assume the very point in controversy. He has placed himself in a position, in which, if he seeks to foreclose the right to redeem, three years are required to complete that remedy, but if he extend his execution on the land, only one year is required to give him an absolute title. And the debtor may as well be supposed to have agreed to the latter, as the creditor to the former. Besides, this supposed agreement would be inconsistent with the right of the creditor to seize other property of the debtor on the execution, for the debt secured by the mortgage; because this proceeding compels a redemption within the term of three years. Cushing v. Hurd, 4 Pick. 253. The truth seems to me to be, that without resorting to any implied agreement, the debtor, by giving the mortgage, subjects his land to all such rights as the law confers on mortgagees; and by giving his promissory note for the mortgage debt, he subjects his person and property, generally, to the remedies which the law affords to compel its payment at maturity. Whether one remedy or the other will most speedily extinguish the equity of redemption, must depend upon the course of the courts, and the time required to obtain a judgment; in which it is by no means a case beyond experience, to obtain a judgment at law, levy the execution, and wait a year for the right

of redemption from such levy to expire, would prove quite as tardy as a foreclosure by possession. I should feel great difficulty, therefore, acting on my own views of the law, in assenting to the doctrine of Atkins v. Sawyer, as applied to an extent on the land mortgaged. I should yield to its authority in adjudicating upon titles in Massachusetts, although the same learned court, which decided that case, refused, in Buck v. Ingersoll, 11 Metc. 226, to apply the rule to personal property. But sitting in Maine, to try a title to real property in that state, I assent to the rule, which I, think fairly deducible from the case of Porter v. King, 1 Greenl. 297. Some of the comments of the complainant's counsel on that case are well founded; but, at the same time it is true, that the question whether an extent on part of the land mortgaged, to satisfy, in part, the mortgage debt, was valid, and effectual to give the mortgagee an absolute title at the expiration of one year, was made and argued by counsel, and decided by the court. The case called for a decision of this question. The mortgagee having sold the land thus extended on, for a larger sum than the appraised value at which it was set off to him, the mortgagor claimed that he should account for that larger sum, upon the ground that the relation of the parties was not changed by the extent, nothing having passed thereby. To this it was replied, that the relation of the parties was changed by the extent, and that this land passed in the same manner as if the land levied on, had not been embraced in the mortgage; and the court said: "That the land having been regularly set off to the creditor at an appraised value, according to the forms of law, his title to it became perfect, after the lapse of a year from the extent. The mortgage was intended, merely to increase the certainty of payment of the debt, not to place any part of the debtor's estate out of the reach of the common and ordinary process of the law." It is observable, also, that the Portland Bank was the indorsee of the notes on which their judgment was recovered. In Crane v. March, 4 Pick. 131, it was held, that the indorsee of a note, secured by mortgage, might cause the equity of redemption to be attached, and sold on execution. In that case a third person held the mortgage, as a trustee, for the indorsee; here the mortgage, as well as the notes, were assigned to the bank; but this seems to me, not a distinction of any real importance. This objection to the respondent's title must therefore be overruled.

Two other objections are taken to the form of the levy. The first is, that the statute, in force when the execution was extended, required the appraisers to set out the land by metes and bounds, and they have only described the land generally, and then given a reference to a deed recorded in the registry of deeds for the county. Whatever might have been thought of this objection if the question were new, I am of opinion that it is foreclosed by the decision of the supreme court of Massachusetts, in Boylston v. Carver, 11 Mass. 515, decided in 1814, while Maine was a part of that state. When, after the separation of this state, it enacted the same statute here, I must consider that it was intended it should be expounded here according to the construction which had already been given to it.

The remaining question arises upon the officer's return on the execution. The part objected to is as follows:

"I have this day levied the within execution thereon, and I have delivered seisin and possession of said estate to the said attorneys and assignees of the creditors, John Warren and Nathaniel Warren; to have and to hold the same to them and to their heirs and assigns forever, in full satisfaction of this execution, and all fees and charges of levying the same; which charges amount to eighty-four dollars and eighteen cents. I therefore return this execution satisfied in full.　　Jere. Martin, Deputy-Sheriff."

"May 16, 1840. Received of Jeremiah Martin, deputy-sheriff, seisin and possession of the above described premises, in full satisfaction of the within execution, and the charges of levying the same.

"John Warren,
"Nathaniel Warren.
"Attorneys and Assignees of the Within-Named Creditors, but for Our Own Use and Benefit."

It is a fair presumption that the officer intended to make a legal extent and return, and therefore if his language fairly admits of a construction which will make the return legal and sufficient, it should be so construed. There is no doubt John and Henry Warren were duly authorized to receive seisin as attorneys for the creditors. The return of the officer declares he delivered seisin of the estate "to the said attorneys and assignees of the creditors." If they were attorneys, it is of no importance that they were also assignees, and mentioning that has no effect. The return proceeds "to have and to hold the same to them and their heirs and assigns forever, in full satisfaction of this execution." The last antecedent to "them" is "John and Nathaniel Warren," but the context shows they were not the persons meant, because the holding is to be in full satisfaction of the execution, and this could only be by the execution creditors having the land; setting it off to the attorneys would not satisfy the execution. I think that, taking the whole return together, the meaning is, that the land was set off to the execution creditors, and not to the attorneys, and this title of the creditors was subsequently conveyed to the defendants. Some objection was made to the receipt of seisin, the attorneys declaring therein, that it was accepted by them as attorneys and assignees

of the creditors, but for their own use. But if they acted as attorneys the statute was complied with, and whether they were also assignees, and intended to hold the land to their own use, were matters between them and the creditors, and did not affect the validity of the proceedings. There is no inconsistency in their acting as attorneys and being at the same time the equitable owners of the land. The result is that the defendant's title must prevail, and the bill must be dismissed with costs